# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

PHILLIP BURNS,

           Petitioner,

v.                                               Case No. 3:22-cv-526-TJC-LLL

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

           Respondents.

## ORDER OF DISMISSAL WITH PREJUDICE

### I.    Status

Petitioner, an inmate of the Florida penal system, initiated this action on May 9, 2022 (mailbox rule), by filing a pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1) and a Petition for Equitable Tolling (Doc. 2).[1] He challenges a 2015 state court (Duval County, Florida) judgment of conviction for attempted second degree murder and possession of a firearm by a convicted felon. Petitioner is serving a thirty-year term of imprisonment. Respondents filed a Motion to Dismiss Untimely Petition

---

[1] The Court denied without prejudice the Petition for Equitable Tolling (Doc. 2), noting that it would render a decision on the timeliness of the Petition, if appropriate, after reviewing the Respondents' response and Petitioner's reply. See Order (Doc. 4).

for Writ of Habeas Corpus (Doc. 7), with exhibits (Docs. 7-1 to 7-22[2]). Petitioner filed a Reply (Doc. 12) and a Supplemental Reply (Doc. 15).[3] This case is ripe for review.[4]

## II. <u>One-Year Limitations Period</u>

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) amended 28 U.S.C. § 2244 by adding the following subsection:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

---

[2] For all documents filed in this case, the Court cites to the document and page numbers as assigned by the Court's electronic case filing system.

[3] In the Supplemental Reply, Petitioner requests the Court direct Respondents to address his claims on the merits and/or schedule an evidentiary hearing and appoint the Federal Public Defender to represent him. See Doc. 15. Given the findings herein, the Court denies Petitioner's requests.

[4] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citing Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The Court finds that "further factual development" is unnecessary. Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

2

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

### III. Procedural History

On October 14, 2015, following a jury trial, Petitioner was adjudicated guilty of attempted second degree murder (a lesser-included offense) (count one) and possession of a firearm by a convicted felon (count two). See Doc. 7-1 at 118-26. The trial court sentenced him to a forty-year term of imprisonment on count one and a concurrent fifteen-year term of imprisonment on count two, with a

three-year minimum mandatory on count two. See id.; see also id. at 185. The trial court ordered that count two's three-year minimum mandatory term run consecutively to the sentence on count one. See Doc. 7-1 at 185.

Petitioner, through counsel, filed a direct appeal. See Doc. 7-5. The state filed an answer brief, see Doc. 7-6, and Petitioner filed a counseled reply, see Doc. 7-7. While the appeal was pending, Petitioner, through counsel, filed a motion in the trial court pursuant to Florida Rule of Criminal Procedure 3.800(b)(2) alleging a sentencing error. Doc. 7-4 at 5-13. The trial court did not rule on the motion; thus, after 60 days, the motion was deemed denied. See Fla. R. Crim. P. 3.800(b)(2)(B). With respect to the pending appeal, the First District Court of Appeal issued a written opinion on March 23, 2017, "affirm[ing] the convictions without comment, but vacat[ing] [Petitioner's] sentences because the trial court believed . . . that the sentences imposed . . . had to be consecutive sentences." Doc. 7-8 at 4-5. Thus, the First DCA remanded the case for resentencing. Id. at 5.

On June 23, 2017, the trial court conducted a de novo resentencing hearing on both counts. See Doc. 7-9. The court imposed a thirty-year term of imprisonment, with a thirty-year minimum mandatory, on count one and a concurrent fifteen-year term of imprisonment, with a three-year minimum mandatory, on count two. See id. at 67-69. That same day, the trial court entered a "NEW" judgment memorializing the new sentences and signed it nunc

4

pro tunc to October 14, 2015, the date of the original judgment. See Doc. 7-10 at 10-18.

Petitioner, through counsel, filed a direct appeal, and his counsel submitted an initial brief pursuant to Anders v. California, 386 U.S. 738 (1967), representing that the "appeal is without merit." Doc. 7-12 at 9. On July 19, 2018, the First DCA per curiam affirmed Petitioner's sentences without issuing a written opinion. See Doc. 7-14 at 3-4. The First DCA issued its mandate on August 16, 2018. Id. at 2.

On September 11, 2018, Petitioner filed a pro se "amended" motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. See Doc. 7-17. The trial court summarily denied the Rule 3.850 motion on June 12, 2019. See Doc. 7-18.[5] Petitioner, through counsel, appealed the denial of his Rule 3.850 motion. See Doc. 7-19. On April 28, 2020, the First DCA per curiam affirmed the decision without issuing a written opinion and issued its mandate on May 26, 2020. See Doc. 7-21.

In the meantime, on January 21, 2020 (mailbox rule), Petitioner filed with the First DCA a pro se petition for writ of habeas corpus, arguing that his

---

[5] The judge signed the order on June 10, 2019, but it was not filed with the Clerk until June 12, 2019. See Doc. 7-18 at 2, 18. Under Florida law, "[a]n order is rendered when a signed, written order is filed with the clerk of the lower tribunal." Fla. R. App. P. 9.020(h).

5

appellate counsel was ineffective. See Doc. 7-15. On May 14, 2020, the First DCA denied the petition "on the merits." Doc. 7-16 at 2.

Petitioner filed the instant case on May 9, 2022.

## IV. Analysis

Petitioner's judgment and sentence became final on October 17, 2018, which is 90 days after the First DCA's per curiam decision affirming Petitioner's second direct appeal.[6] See Clay v. United States, 537 U.S. 522 (2003); Close v. United States, 336 F.3d 1283, 1285 (11th Cir. 2003) ("According to rules of the Supreme Court, a petition for certiorari must be filed within 90 days of the appellate court's entry of judgment on the appeal or, if a motion for rehearing is timely filed, within 90 days of the appellate court's denial of that motion." (citing Supreme Court Rule 13.3[7])). Before the judgment became final, however, Petitioner filed his Rule 3.850 motion; thus, the one-year limitations period remained tolled through May 26, 2020, when the First DCA issued its mandate

---

[6] Respondents contend that the June 23, 2017 judgment is a "new judgment and sentence for purposes of § 2254 habeas corpus starting AEDPA's 365 day deadline." Doc. 7 at 7. The judgment itself is labeled "NEW JUDGMENT" and the trial judge signed it on June 23, 2017, nunc pro tunc to October 14, 2015. Doc. 7-10 at 10-18. Because neither party addresses the implication of the "nunc pro tunc" designation, and because the Petition is untimely under any calculation, the Court assumes for purposes of this Order only that Petitioner's judgment and sentence became final after his second direct appeal. But see Osbourne v. Sec'y, Fla. Dep't of Corr., 968 F.3d 1261 (11th Cir. 2020).

[7] See Sup. Ct. R. 13.3 ("The time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate.").

in the appeal from the summary denial of the Rule 3.850 motion. The one-year limitations period began the next day (May 27, 2020) and expired one year later without the filing of a tolling motion.[8] As such, the Petition, filed on May 9, 2022, is untimely.

Petitioner acknowledges that his Petition is untimely filed, but he argues that he is entitled to equitable tolling based on his attorney's "grossly negligent" and "dishonest" conduct which effectively resulted in "attorney abandonment." Doc. 12 at 2; see also Doc. 2. He claims that the actions of his attorney who represented him on the appeal of the denial of his Rule 3.850 motion and the COVID-19 pandemic[9] prevented him from filing this case between May 27, 2020 and May 27, 2021. Doc. 12 at 8-9.

"The United States Supreme Court has held that AEDPA's statutory limitations period may be tolled for equitable reasons." Thomas v. Att'y Gen., 992 F.3d 1162, 1179 (11th Cir. 2021). However, "equitable tolling is an extraordinary remedy 'limited to rare and exceptional circumstances and typically applied sparingly.'" Cadet v. Fla. Dep't of Corr., 853 F.3d 1216, 1221

---

[8] Petitioner's pro se state court petition for writ of habeas corpus had no effect on the one-year limitations period, because it was filed and disposed of during the pendency of Petitioner's appeal from the denial of his Rule 3.850 motion.

[9] Petitioner contends that he was under "the 'blanket restriction' of COVID-19 in all litigation matters" from September 18, 2019, to November 8, 2019. Doc. 12 at 4. But COVID-19 was not identified in China until December 2019, and it did not affect the United States until early 2020. See CDC Museum COVID-19 Timeline, available at https://www.cdc.gov/museum/timeline/covid19.html (last visited May 28, 2025).

7

(11th Cir. 2017) (quoting <u>Hunter v. Ferrell</u>, 587 F.3d 1304, 1308 (11th Cir. 2009)). To warrant the application of this extreme remedy, a petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." <u>Holland v. Fla.</u>, 560 U.S. 631, 649 (2010) (quoting <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 418 (2005)). "The petitioner has the burden of establishing his entitlement to equitable tolling; his supporting allegations must be specific and not conclusory." <u>Cole v. Warden, Ga. State Prison</u>, 768 F.3d 1150, 1158 (11th Cir. 2014) (citation omitted); <u>see</u> <u>Brown v. Barrow</u>, 512 F.3d 1304, 1307 (11th Cir. 2008) ("[A]n inmate bears a strong burden to show specific facts to support his claim of extraordinary circumstances and due diligence." (citation omitted)).

Petitioner contends that the attorney his family hired to pursue the appeal of his Rule 3.850 proceeding effectively abandoned him. He complains that his attorney did not communicate with him during his appeal. Doc. 12 at 3-4. But he acknowledges that his attorney sent him a copy of the initial brief the attorney filed on Petitioner's behalf[10] and a copy of the First DCA's decision,

---

[10] Petitioner asserts that his attorney "amended the already filed Brief appealing the denial of [his] 3.850 Motion, and filed his version without any input from [Petitioner]." Doc. 2 at 4. A review of the First DCA's docket reflects that the notice of appeal was filed on August 20, 2019, counsel filed a notice of appearance on September 18, 2019, and counsel filed the initial brief on November 8, 2019. <u>See</u> Doc. 7-20; <u>Burns v. State</u>, No. 1D2019-3021 (Fla. 1st DCA). There is no indication on the state court's docket that a pro se initial brief was filed.

8

along with a letter. Id. at 4-5. In the letter, counsel explained that the First DCA issued a per curiam affirmance without a written opinion, that there were "no further steps to take with [the] appeal," and there was nothing further counsel could do with Petitioner's case. Doc. 2-3 at 2-3; see also Doc. 2 at 4 ("Mr. Molansky sent the denial from the Initial Brief and a letter saying he was finished representing the Petitioner in April 2020.").[11] Petitioner summarizes the contact his mother had with the attorney and contends that they were led to believe the attorney was still representing him after his Rule 3.850 appeal concluded. See Doc. 12 at 6-8. He argues that given his attorney's conduct, his one-year limitations period was tolled through July or August 2021, thus making his Petition timely filed.

The Court has thoroughly reviewed Petitioner's filings but finds that he fails to show he is entitled to equitable tolling. He acknowledges that he received the attorney's April 29, 2020 letter with a copy of the First DCA's decision. See Doc. 12 at 5. He further acknowledges that when he received that letter, "he tried to contact [the attorney] to ask questions about the Federal time limitations," but the attorney "would not respond." Doc. 2 at 5. Thus, Petitioner

---

[11] Petitioner filed a copy of the "Legal Representation Agreement" between him and his postconviction appellate attorney. Doc. 2-1 at 2-5. The "Scope of Engagement" was defined as "[r]epresentation in appeal to the district court of appeal," and the "Matter Involved" was "[r]epresentation in appeal of post conviction motion." Id. at 2 (some capitalization omitted). The agreement is signed by Petitioner's father and dated September 18, 2019. Id. at 5; Doc. 2 at 2.

9

was aware of the time limitations and that his attorney was no longer representing him. Even more, the attorney's failure to respond should have placed Petitioner on further notice that his attorney was no longer representing him. Yet, Petitioner still failed to diligently pursue his rights and never timely filed anything with this Court.

But even giving Petitioner the benefit of the doubt that he believed counsel was still representing him in some capacity and thus he was precluded from filing any pro se motions or petitions, Petitioner concedes that on or about February 10, 2021, he was informed that the attorney "had no intentions of continuing with the case. [The attorney] withdrew his expressed intentions and officially abandoned the case." Doc. 12 at 7 (emphasis omitted). At that time, Petitioner still had a little more than three months left on his one-year limitations period. The circumstances Petitioner describes simply do not amount to the extraordinary circumstances necessary to invoke equitable tolling. See Dodd v. United States, 365 F.3d 1273, 1283 (11th Cir. 2004) ("[L]ockdowns and periods in which a prisoner is separated from his legal papers are not 'extraordinary circumstances' in which equitable tolling is appropriate."); Moore v. Frazier, 605 F. App'x 863, 868 (11th Cir. 2015) (recognizing that pro se litigants "are deemed to know of the one-year statute of limitations," and "a lack of a legal education" has never been sufficient to excuse untimely filing (internal quotations and citations omitted)); Perez v.

10

Florida, 519 F. App'x 995, 997 (11th Cir. 2013) ("[W]e have not accepted a lack of a legal education and related confusion or ignorance about the law as excuses for a failure to file in a timely fashion."); Mendoza v. Fla. Dep't of Corr., No. 3:13-cv-1247-J-34PDB, 2016 WL 6727749, at *4 (M.D. Fla. Nov. 15, 2016) ("Inmate law clerks are not lawyers, and therefore any negligence on their part will not justify equitable tolling."); Wallace v. United States, 981 F. Supp. 2d 1160, 1165 (N.D. Ala. 2013) (recognizing that "institutional transfers, periods of confinement under more restrictive conditions than general population, and lack of ready access to legal paperwork and law libraries are not extraordinary circumstances; they are usual incidents of prison life" (internal quotations and citations omitted)).[12]

Petitioner has failed to present circumstances that would justify the extraordinary remedy of equitable tolling, and he also does not make any showing of actual innocence. See Rozzelle v. Sec'y Fla. Dep't of Corr., 672 F.3d 1000, 1011 (11th Cir. 2012). Therefore, this case is due to be dismissed with prejudice as untimely. Accordingly, it is

---

[12] The Court does not rely on unpublished Eleventh Circuit or district court opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060-61 (11th Cir. 2022); Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects"); see also Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

11

**ORDERED**:

1. The requests made in Petitioner's Supplemental Reply (Doc. 15) are **DENIED**.

2. This case is **DISMISSED with prejudice** as untimely.

3. If Petitioner appeals, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[13]

4. The **Clerk** shall enter judgment dismissing this case with prejudice as untimely, terminate any pending motions, and close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 17th day of June, 2025.



TIMOTHY J. CORRIGAN
Senior United States District Judge

---

[13] The Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.

12

JAX-3 6/12
c:
Phillip Burns, #113702
Counsel of Record

13